```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
TERESA RAMIREZ,

                Plaintiff,                    MEMORANDUM & ORDER
                                               20-CV-6143 (JS)(SIL)
     -against-

CLINTON PANADERIA, INC., HERGUER
SEGOVIA, MILTON AYALA, JOHN DOE,
and JANE DOE,

                Defendants.
---------------------------------X
APPEARANCES
For Plaintiff:        Ashish Kapoor, Esq.
                      Kapoor Law Firm, PLLC
                      400 Garden City Plaza, Suite 432
                      Garden City, New York  11530

For Defendants        Danielle Elizabeth Mietus, Esq.
Herguer Segovia &     Jasmine Y. Patel, Esq.
Clinton Panaderia,    Franklin, Gringer & Cohen, P.C.
Inc.:                 666 Old Country Road, Suite 202
                      Garden City, New York  11530

For Defendants        No Appearances
Milton Ayala, John
Doe & Jane Doe:
```

SEYBERT, District Judge:

SEYBERT, District Judge:

Teresa Ramirez ("Plaintiff") initiated this wage and hour action against Clinton Panaderia, Inc. ("Clinton"), Herguer Segovia ("Segovia" and together with Clinton, the "Defaulting Defendants"), Milton Ayala ("Ayala"), John Doe, and Jane Doe (together with Ayala the "Individual Defendants"), alleging violations of the Fair Labors Standards Act ("FLSA") 29 U.S.C.

§§ 201 et seq., and the New York Labor Law ("NYLL") §§ 190 et seq., for failure to pay minimum wage, overtime compensation, and provide wage notices and statements. (Am. Compl., ECF No. 8.) Neither the Defaulting Defendants nor the Individual Defendants timely answered or otherwise responded to the Original Complaint (Original Compl., ECF No. 1). On April 8, 2021, Plaintiff filed an Amended Complaint and subsequently requested certificates of default against the Defaulting Defendants for failure to answer or otherwise respond to the Original Complaint. (See Request for Certificates of Default, ECF No. 9.) The Clerk of the Court entered the Defaulting Defendants' default on April 8 as to Segovia, and April 12, 2021, as to Clinton. (See Clerk's Entry of Default, ECF Nos. 10, 13.) Afterwards, Plaintiff moved for Default Judgment against the Defaulting Defendants only, who filed opposition to the motion and cross moved for a Traverse Hearing (hereafter the "Cross-Motion.") (See Pl.'s Motion, ECF No. 14; Defs.' Opp'n, ECF No. 15.)

By Report and Recommendation dated December 19, 2022, Magistrate Judge Steven I. Locke recommended the Court deny Plaintiff's Motion for Default Judgment and grant the Defaulting Defendants' Cross-Motion. (Report & Recommendation (hereafter the "R&R"), ECF No. 24.) Plaintiff timely filed objections, to which the Defaulting Defendants responded. (Pl's. Obj., ECF No. 25; Defs.' Reply, ECF No. 26.) For the following reasons, the Court

2

sustains Plaintiff's objection as to the Defaulting Defendants' Cross-Motion for a Traverse Hearing and overrules Plaintiff's objection as to her Motion for Default Judgment.

BACKGROUND

The Court presumes the parties' familiarity with the factual and procedural background of this case, as set forth in the R&R, and recites only the facts necessary to adjudicate the pending motion. (See R&R at 2-5.)

I. Facts[1]

Plaintiff was employed by Clinton, a New York Corporation, in or around 2013 until sometime in 2020. (Am. Compl. ¶¶ 4, 13, 14.) Segovia was the owner of Clinton. (Id. at ¶ 1.) While employed by Clinton, Plaintiff worked seven days per week, 12 hours per day, and was paid a flat fee of $100.00 per day. (Id. ¶¶ 15-17.) This equated to $8.33 per hour, which was below the minimum wage in Nassau County for all the years in which Plaintiff worked at Clinton. (Id. ¶¶ 18-27.) Additionally, Plaintiff complained that she was entitled to, and did not receive, overtime pay of 150% of the minimum wage for any hours worked exceeding eight hours per weekday. (Id. ¶ 29.) Finally, Plaintiff

---

[1] All relevant background and procedural facts are taken from the Amended Complaint and the Parties' submissions and are assumed true for purposes of resolving this motion.

complained that she did not receive proper wage notices at the time of hire, or February 1 of each year thereafter. (Id. ¶ 33.)

## II. Procedural History

On December 28, 2020, Plaintiff served Segovia by serving her Summons and Complaint upon Segovia's niece[2] and mailing a copy to him at 533 Chester Street, South Hempstead, New York 11550 (hereafter the "Chester Street Address.") (See Segovia Executed Summons, ECF No. 6.) The Chester Street Address was understood by Plaintiff to be Segovia's usual place of abode. (Pl.'s Support Memo, ECF No. 22, at 3.) The Affidavit of Service affirms that "service was made [on Segovia] by delivering a true copy thereof to and leaving with "Jane" Brand Niece[,] a person of suitable age and discretion at [the Chester Street Address] said premises being the recipient's abode within the State of New York." (See Segovia Executed Summons.) The Affidavit further stated that the deponent "asked Jane Brand whether recipient [] Segovia, maintain[ed] the [Chester Street Address] as his/her usual abode within the State of New York, and the answer was in the affirmative." (Id.) Segovia, through a sworn declaration avers that he no longer resides at the Chester Street Address and has

---

[2] The Defaulting Defendants do not object to the process server's affirmation that Jane Brand qualified as a person of suitable age and discretion under Federal Rule of Civil Procedure 4(e)(2)(B).

4

not done so for "approximately eight [] years." (Segovia Decl., ECF No. 18, ¶ 4.)

Clinton was served with the Summons and Complaint through the New York Secretary of State pursuant to New York Business Corporation Law § 306. (See Clinton Executed Summons, ECF No. 11.) Segovia maintains that he "seldom visited Clinton's premises" and relied on "on-site managers and supervisors to provide [him] with any and all pertinent materials" that were delivered to Clinton's business address and that he was not notified of this lawsuit until mid-September 2021, whereupon he hired counsel. (See Segovia Decl., ¶¶ 5-8.)

Neither of the Defaulting Defendants timely responded to the Original Complaint.[3] (See Case Docket, in toto.) On April 8, 2022, Plaintiff filed an Amended Complaint which added Ayala to the action but otherwise kept consistent the claims against the Defaulting Defendants. (See Kapoor Decl., ECF No. 14-1, attached to Pl.'s Motion, ¶ 6.) Next, Plaintiff requested certificates of default against the Defaulting Defendants for their failure to answer or otherwise respond to the Original Complaint. (See Request for Certificates of Default, ¶¶ 2, 7.) In her request, Plaintiff averred that the "Defaulting Defendants have not answered or otherwise moved with respect to the Complaint and the

---

[3] The Individual Defendants also failed to timely answer or otherwise respond to the Original Complaint.

5

time . . . to answer or otherwise move has not been extended." (Id., at ¶ 7.) These certificates of default were entered on April 8, and April 12, against Segovia and Clinton respectively. (See Clerk's Entry of Default.)

On April 28, 2022, Plaintiff filed her Motion for Default Judgment against the Defaulting Defendants.[4] (See Pl.'s Motion.) The Defaulting Defendants filed a joint opposition to Plaintiff's Motion arguing that, as to Segovia, service of process was deficient since it was served at an address that "was not his residence and had not been for over eight years." (Defs.' Opp'n at 8-9.) Defendants further argued that various procedural deficiencies warranted denial of Plaintiff's Motion. (Id. at 9-14.) For example, the Defaulting Defendants contended that Plaintiff's Default Motion was mooted by the fact that she filed an Amended Complaint rendering the Defaulting Defendants' default with respect to the original pleading a nullity. (Opp'n, at 9-11.) Alternatively, the Defaulting Defendants argued that Plaintiff could not establish her entitlement to a default judgment under Federal Rule 55(c). (Id. 14-18.)

III. Judge Locke's R&R

In the R&R, Judge Locke began by summarizing the Rules governing the procedural requirements that a party must fulfil

---

[4] Plaintiff neither requested certificates of default against the Individual Defendants nor moved for default judgment against them.

6

before moving for entry of a default judgment. (See R&R, at 5-6.) Next, Judge Locke laid out the appropriate legal standards governing motions for default judgment, including the Second Circuit's oft-stated preference that disputes should be resolved on their merits. (Id.) Judge Locke concluded that Plaintiff's Motion should be denied reasoning that the Defaulting Defendants had demonstrated an intention to defend the action by: (1) appearing in the case after being served with Plaintiff's Motion; (2) opposing Plaintiff's Motion; and (3) filing a proposed answer. (Id.) Judge Locke further found that Plaintiff had failed to show that the Defaulting Defendants' defaults were willful, or in bad faith. (Id.)

After concluding that Plaintiff's Motion should be denied, Judge Locke next analyzed the Defaulting Defendants' Cross-Motion for a Traverse Hearing pursuant to Federal Rule 4(e). (Id.) After establishing the appropriate legal standard governing service of process under the Federal Rules and the Rules of New York, Judge Locke determined that a Traverse Hearing should be held to determine whether service was proper upon Segovia. (Id. at 8.) Judge Locke reasoned that while a process server's affidavit establishing proper service creates a prima facie case of proper service, that "Segovia's sworn denial of receipt of service rebuts th[at] presumption" and "necessitates an evidentiary hearing" on the matter. (Id.)

7

DISCUSSION

I. Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3). The district judge must evaluate proper objections de novo; however, where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); FED. R. CIV. P. 72(b)(3). The Court need not review the findings and conclusions to which no proper objection has been made. Thomas v. Arn, 474 U.S. 140, 150 (1985).

II. Analysis

Plaintiff raises two specific objections to the R&R which the Court reviews de novo pursuant to 28 U.S.C. § 636(b)(1). First, Plaintiff objects to Judge Locke's recommendation that the Court schedule a Traverse Hearing to determine the sufficiency of service upon Segovia[5]; second, Plaintiff objects to the denial of

---

[5] Plaintiff also objected to holding a Traverse Hearing as to Clinton; however, the R&R did not recommend that a Traverse Hearing should be held with regard to Clinton and so the Court does not review this improper objection.

8

her Default Judgment Motion as to Clinton. The Court reviews each of these objections in turn.

### A. Judge Locke's Recommendation that Defendants' Cross-Motion for a Traverse Hearing Should be Granted

Pursuant to Federal Rule of Civil Procedure 4(e), an individual may be served by, inter alia, "leaving a copy of each [the summons and of the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." FED. R. CIV. P. 4(e)(2)(B). "In New York, a process server's affidavit of service establishes a prima facie case of the account [and] of the method of service." Old Republic Ins. Co. v. Pacific Fin. Serv's. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002). As such, "in the absence of contrary facts, [the court] presume[s] that [the party] was properly served with the complaint." Id. While "[a] defendant's sworn denial of receipt of service, [] rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing," id., "no hearing is required where the defendant fails to swear to 'specific facts to rebut the statements in the process server's affidavits.'" Id. (citing Simonds v. Grobman, 716 N.Y.S.2d 692, 693 (2000)); accord McCormick 110, LLC v. DeCosta, No. 15-CV-2485, 2020 WL 1503380, at *4 (E.D.N.Y. Jan. 28, 2020) ("bare and unsubstantiated denials . . . are insufficient to rebut

the presumption of service.'") (citing U.S. Bank, N.A. v. Tauber, 140 A.D.3d 1154, 1155 (2d Dep't 2016)).

Generally, where a defendant claims that he did not reside at the address where service was effectuated, he must provide documentary evidence supporting his claims. See Am. Home Mortg. Acceptance, Inc. v. Lubonty, 188 A.D.3d 767, 770-71 (2d Dep't 2020) ("Where the defendant denies residing at the premise where service allegedly was made, the sworn denial combined with documentary and other evidence supporting such claim, is sufficient to rebut the plaintiff's prima facie showing of proper service and to necessitate an evidentiary hearing." (citing Tauber, 140 A.D.3d at 1155)) (emphasis added); accord McCormick 110, 2020 WL 1503380, at *4 (finding that where an affidavit contained only two "bare and unsubstantiated statements" related to defendant's non-receipt of a notice and was not accompanied with any "evidence to support her denial of service[,]" such affidavit fell short of "stating the specific facts required to overcome the presumption of proper service"); Bank of Am., N.A. v. Lewis, 190 A.D.3d 910, 911 (2d Dep't 2021) (remitting case for hearing where defendant submitted a sworn affidavit averring that he did not reside at the address wherein service was made and supplemented his affidavit with copies of his tax returns which corroborated his statements); Bank of N.Y. Mellon v. Lawson, 176 A.D.3d 1155, 1157 (2d Dep't 2019) ("The defendants failed to submit

10

any documentary evidence to support [defendant's] claim that he did not reside at the [] address at the time he was served, and they failed to submit an affidavit from a resident of that address . . . stating that [defendant] did not live there.").

Here, absent documentary evidence supporting his claim, this Court is not convinced that Segovia's conclusory and unsupported assertion that he does not reside at the Chester Street Address is sufficient to rebut the presumption of proper service in this case. As Plaintiff notes in her objections, Segovia provides no specific facts to rebut the process server's statement that Segovia's niece confirmed that the Chester Street Address was Segovia's usual place of abode. Similarly, Segovia has offered no facts or evidence as to where, if not the Chester Street Address, he currently resides; when he moved to this new address; or his connection to the Chester Street Address and the people currently residing there.

Accordingly, the Court sustains Plaintiff's objection regarding Magistrate Judge Locke's recommendation that a traverse hearing should be held as to Segovia.

B. <u>Judge Locke's Recommendation that Plaintiff's Motion for Default Judgment be Denied</u>

Motions for default judgment are governed by Federal Rule of Civil Procedure 55, which provides for a two-step process. See <u>Priestley v. Headminder, Inc.</u>, 647 F.3d 497, 504-05 (2d Cir.

11

2011); New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. See Priestley, 647 F.3d at 497; see also FED. R. CIV. P. 55(a). Once the certificate of default is issued, "the next step requires the plaintiff to seek a judgment by default under Rule 55(b)." Id.; see also FED. R. CIV. P. 55(b). "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk -- on the plaintiff's request, with an affidavit showing the amount due -- must enter judgment for that amount . . . against a defendant who has been defaulted for not appearing." FED. R. CIV. P. 55(b)(1). Otherwise, "the party must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2). Procedurally under this Court's Local Rules "[A] party seeking a judgment by default shall apply to the Court . . . and shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." E.D.N.Y. Local Rule 55.2.

Under Federal Rule of Civil Procedure 55(c), a court "may set aside an entry of default for good cause." "Good cause" is not defined in the Federal Rules of Civil Procedure. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d. Cir. 1993). Consequently, the Second Circuit has "established three criteria that must be assessed in order to decide whether to relieve a party

12

from default." Id. Those factors are: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Id.

The Court need not analyze the merits of Plaintiff's Motion for Default Judgment because it is in agreement with the Defaulting Defendants that the procedural deficiencies present in this case have rendered the motion moot.

Where an amended complaint does not assert new claims against a party who is in default for failure to appear "[n]o service [of the amended complaint] is required." FED. R. CIV. P. 5(a)(2); see also Allstate Ins. Co. v. Yadgarov, No. 11-CV-6187, 2014 WL 860018, at *6 (E.D.N.Y. March 5, 2014). As such, "the amended complaint becomes the operative pleading on filing." Falls Lake Ins. Co. v. DNA Plumbing Contractors, Inc., No. 20-CV-2798, 2021 WL 3518279, at * 3 (E.D.N.Y. May 4, 2021.) "As the operative pleading, an amended complaint renders a prior entry of default a nullity and moots a pending motion for default judgment." Id.; see also United Ass'n of Plumbers and Steamfitters Local No. 22 v. H&M Plumbing and Mech. Contracting, Inc., No. 14-CV-070S, 2015 WL 1735117, at *[1] (W.D.N.Y. April 16, 2015) (noting that where "[p]laintiffs obtained a default from the Clerk with respect to . . . their first complaint, but did not seek a new entry of default on the Third Amended Complaint" that, "once [the] original

13

complaint [was] superseded, [the] clerk's entry of default on that pleading [was] also mooted.").

Here, Plaintiff obtained Clerk's Entries of Default against both Defaulting Defendants based upon their failure to appear or otherwise respond to the Original Complaint. However, the same day that she requested the certificates of default, Plaintiff filed an Amended Complaint which became the operative pleading once filed and it did not have to be re-served on the Defaulting Defendants. Nevertheless, the Amended Complaint mooted the later entered Entries of Default because they were based upon the Defaulting Defendants' failure to answer or respond to the Original Complaint. Since a party seeking a default judgment must append to its application, <u>inter alia</u>, the appropriate Clerk's certificate of default, and since Plaintiff's certificates of default were mooted by her Amended Complaint, Plaintiff cannot satisfy the procedural requirements for a default judgment based upon the Defaulting Defendants' failure to answer or otherwise respond to the Amended Complaint, which is now the operative pleading in this matter. <u>See</u> <u>Seaford Avenue Corp. v. ION Ins. Co.</u>, No. 22-CV-3449, 2022 WL 17669438, at *5 (E.D.N.Y. Dec. 14, 2022) (Seybert, J.); <u>see also</u> <u>Jones v. N.Y.V. Dep't of Hous. Pres. And Dev.</u>, No. 09-CV-2104, 2010 WL 572589, at *1 (E.D.N.Y. Feb. 11, 2010).

14

Even if the Default Motion were not procedurally defective, this Court agrees with Judge Locke's recommendation that Plaintiff has failed to show that the Defaulting Defendants' default was willful. Moreover, Plaintiff has failed to show that any of the other factors that are pertinent to the analysis weigh in favor of granting her Motion for Default Judgment. For example, Plaintiff neither argues that the Defaulting Defendants lack a meritorious defense, nor that she has been in any way prejudiced by their failure to appear. Indeed, Plaintiff's only objection on this issue is that since the Original Complaint was adequately served upon Clinton, there is no basis for not awarding her the requested Default Judgment against it. While Plaintiff's objection could go to the willfulness element of Clinton's default, such an argument falls short of establishing that this factor weighs in her favor. See Argus Rsch. Grp., Inc. v. Argus Sec., Inc., 204 F. Supp. 2d 526, 531 (E.D.N.Y.) ("To find that a default was willful, it must be clear that the defaulting party engaged in deliberate or egregious conduct.") Indeed, although the Court has already found that Segovia failed to produce documentary evidence sufficient to support his claim of improper service, he brings forth testimonial evidence contradicting Plaintiff's claim that Clinton's default was willful.

15

Thus, Plaintiff's objection to Judge Locke's recommendation denying her Motion for Default Judgment is overruled.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's objections are: (1) SUSTAINED as to the Defaulting Defendants' Cross-Motion for a Traverse Hearing, and (2) OVERRULED as to the denial of her Motion for Default Judgment. IT IS FURTHER ORDERED that the R&R is adopted as modified in accordance with this Court's rulings herein. Accordingly, Plaintiff's Motion for a Default Judgment is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February 17, 2023
      Central Islip, New York